IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD TAYLOR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JEFFREY GURAL, <br><br> Defendant. | CIVIL ACTION <br> NO. 23-4882 |

**ORDER**

**AND NOW**, this 17th day of April 2025, upon consideration of Defendant's Motion for Reconsideration (Doc. No. 48), Plaintiff Judith Taylor's Response in Opposition (Doc. No. 49), and Defendant's Reply (Doc. No. 50), it is **ORDERED** that Defendant's Motion for Reconsideration (Doc. No. 48) is **DENIED**.[1]

---

[1] **Introduction and Background**

On December 11, 2023, Plaintiffs Howard and Judith Taylor ("Plaintiffs") filed a Complaint against Defendant Jeffrey Gural ("Defendant"), alleging numerous claims against him. (See Doc. No. 1.) On May 29, 2024, in response to a Motion to Dismiss the Complaint filed by Defendant, Plaintiffs filed an Amended Complaint. (Doc. No. 17.) The Amended Complaint alleges the following claims against Defendant:

> (1) defamation per se (Count I); (2) defamation (Count II); (3) trade libel (Count III); (4) false light invasion of privacy (Count IV); (5) tortious interference with contractual relationships (Count V); (6) violation of the Sherman Act, Section 2 (Count VI); (7) violation of the Sherman Act, Section 1 (Count VII); (8) violation of N.J. Stat. Ann. § 56:9-4 (Count VIII); (9) violation of N.J. Stat. Ann. § 56:9-3 (Count IX); (10) violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340 (Count X); (11) unfair competition (Count XI); (12) tortious interference with prospective economic advantage (Count XII); and (13) promissory estoppel (Count XIII).

(See Doc. No. 45 at 4-5 (citing Doc. No. 17).)

1

On July 18, 2024, Defendant filed a Motion to Dismiss the Amended Complaint. (Doc. No. 25.) On February 27, 2025, the Court entered an Opinion and Order granting in part and denying in part Defendant's Motion to Dismiss the Amended Complaint. (Doc. Nos. 46, 45.) The Court did not dismiss the Sherman Act Section 1 claims brought by Plaintiff Judith Taylor (Counts VII, IX, and X) because she had sufficiently alleged that "Defendant unreasonably restrained trade by becoming party to a conspiracy 'to enact an illegal group boycott of . . . Judith Taylor.'" (Doc. No. 45 at 44.) In reaching this conclusion, the Court held that Plaintiff Judith Taylor had sufficiently alleged for the purpose of surviving a motion to dismiss that Defendant's unreasonable restraint of trade was a per se violation of Section 1 of the Sherman Act. (Id. at 54)

On March 13, 2025, Defendant filed a Motion for Reconsideration, requesting that the Court reconsider its decision to deny the Motion to Dismiss the Amended Complaint only as to the Sherman Act Section 1 claims brought by Plaintiff Judith Taylor. (Doc. No. 48.) On March 27, 2025, Plaintiff Judith Taylor filed a Response in Opposition and, on April 3, 2025, Defendant filed a Reply. (Doc. Nos. 49, 50.) Defendant's Motion for Reconsideration (Doc. No. 48) is now ripe for disposition and, for reasons that follow, will be denied.

**Standard of Review**

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quotation marks omitted)). Thus, a proper motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)). Clear error of law occurs when the court misapplies or fails to recognize controlling precedent. See In re Energy Future Holdings Corp., 904 F.3d 298, 312 (3d Cir. 2018) (citing Burritt v. Ditlefsen, 807 F.3d 239, 253 (7th Cir. 2015)).

However, "[a] motion for reconsideration 'addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly.'" In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)). "The moving party bears a substantial burden, which cannot be satisfied through 'recapitulation of the cases and arguments considered by the court before rendering its original decision.'" United States v. Cephalon, Inc., 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016) (quoting Young Jewish Leadership Concepts v. 939 HKH Corp., No. 93-2643, 1994 WL 184410, at *1 (E.D. Pa. May 10, 1994)) (further citations omitted). Therefore, "[m]ere dissatisfaction with the Court's ruling . . . is not a proper basis for reconsideration." Progressive Cas. Ins. Co. v. PNC Bank, N.A., 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999). Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." In re Asbestos Prods.

Liab. Litig. (No. VI), 801 F. Supp. 2d 333, 334 (E.D. Pa. 2011) (quoting Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)).

**Analysis**

Here, Defendant contends that Plaintiff Judith Taylor did not adequately allege a per se violation of Section 1 of the Sherman Act and requests that the Court reconsider its conclusion that she did. (See Doc. No. 48-1.) To state a Section 1 claim, a plaintiff must adequately plead the following elements: (1) that the defendant was a party to a conspiracy and (2) "that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 315 (3d Cir. 2010). "The second requirement of a Section 1 claim, an unreasonable restraint on trade, is analyzed under either the per se standard or the rule of reason standard." Premier Comp Solutions LLC v. UPMC, 377 F. Supp. 3d 506, 536-37 (W.D. Pa. 2019).

The rule of reason standard "is the default mode of analysis." In re Processed Egg Products Antitrust Litig., 962 F.3d 719, 726 (3d Cir. 2020). A Section 1 claim under the rule of reason requires the plaintiff to show "that the alleged . . . agreement produced adverse, anticompetitive effects within the relevant product and geographic markets." United States v. Brown Univ., 5 F.3d 658, 668 (3d Cir. 1993). Conversely, a finding of "[p]er se illegality 'is reserved for only those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" Burtch v. Milberg Factors, Inc., 662 F.2d 212, 222 (3d Cir. 2011). This means that, unlike under the rule of reason, to state a per se violation of Section 1, a plaintiff need not "define a market or prove market power." In re Ins. Brokerage Antitrust Litig., 618 F.3d at 316.

Courts have developed a list of activities that qualify as per se violations, including certain types of group boycotts. See Cemar, Inc. v. Nissan Motor Corp. in U.S.A., 678 F. Supp. 1091, 1095 (D. Del. 1988) ("The Supreme Court has held that certain group boycotts are per se violations of the Sherman Act.") A group boycott is "a concerted refusal[] to deal." Id. at 1095. "[A] concerted activity is a per se group boycott if the 'purpose is to' exclude a person or group from the market, or to accomplish some other anti-competitive objective, or both." Id. at 1096. However, the Supreme Court has held that a group boycott is not per se illegal unless it involves horizontal agreements among direct competitors. NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 135 (1998) ("[P]recedent limits the per se rule in the boycott context to cases involving horizontal agreements among direct competitors.") A horizontal agreement is "an agreement between competitors at the same market level." In re Ins. Brokerage Antitrust Litig., 618 F.3d at 318. In contrast, a vertical agreement is a restraint on trade "imposed by agreement between firms at different levels of distribution." Irish v. Ferguson, 970 F. Supp. 2d 317, 367 (M.D. Pa. 2013).

In its Opinion on the Motion to Dismiss the Amended Complaint, the Court found that Plaintiff Judith Taylor had adequately alleged that Defendant was party to a per se group boycott, that is, he was party to a horizontal agreement with his direct competitors. (See Doc. No. 45.) In the instant Motion for Reconsideration, Defendant contends the Court erred in reaching this

3

conclusion by making the following mistakes: (1) finding that Plaintiff Judith Taylor had adequately alleged that Defendant was party to a horizontal agreement, (2) finding that the alleged conspiracy to which Defendant was a party "could be per se unreasonable," and (3) "concluding that Defendant Gural competes with the three racetracks [in which] he is alleged to have an ownership interest." (See Doc. No. 48-1.)

But in arguing that the Court erred in finding that Plaintiff Judith Taylor adequately alleged that Defendant was party to a horizontal agreement, Defendant improperly asks the Court "to rethink what it ha[s] already thought through—rightly or wrongly." In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d at 640. In its Opinion, the Court concluded that Plaintiff Judith Taylor adequately alleged "that the group boycott consisting of Defendant, as a partial owner of the racetracks, and the Meadowlands, Vernon Downs, and Tioga Downs, as racetracks, is a horizontal agreement because each of the boycott members is a competitor at the same market level: they each provide harness racing track venues." (Doc. No. 45 at 54 (citing Doc. No. 17 at ¶ 259).) The Court stands by this finding now. And while the Court acknowledges Defendant's disagreement with this finding, Defendant's "[m]ere dissatisfaction with the Court's ruling . . . is not a proper basis for reconsideration." Progressive Cas. Ins. Co., 73 F. Supp. 2d at 487.

Moreover, in arguing that the Court erred in finding that the alleged conspiracy to which Defendant was a party "could be per se unreasonable" and "concluding that Defendant Gural competes with the three racetracks [in which] he is alleged to have an ownership interest," Defendant does not follow the Court's role in deciding motions to dismiss. (Doc. No. 48-1 at 4.) On a motion to dismiss, a court must determine only whether a plaintiff, in the complaint, has sufficiently alleged the elements of the claim or claims put forth in the complaint. See Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (noting that, on a motion to dismiss, a court should "evaluat[e] whether all of the elements identified in [the claims] are sufficiently alleged"). As such, when deciding the Motion to Dismiss the Amended Complaint, the Court did not determine, as Defendant argues, that his actions "could be per se unreasonable" nor did it conclude that he "competes with the three racetracks [in which] he is alleged to have an ownership interest." (Doc. No. 48-1 at 4.) Instead, it merely held that, viewing the allegations in the Complaint in the light most favorable to Plaintiff Judith Taylor, Plaintiff had alleged that Defendant's actions were per se unreasonable and that he competes with the racetracks in which he is alleged in have an ownership interest.

For example, the Court's Opinion states the following:

> Here, accepting Plaintiffs' allegations as true, Plaintiffs adequately allege that Defendant committed a per se violation of Section 1. . . . Plaintiffs have alleged that the group boycott consisting of Defendant, as a partial owner of the racetracks, and the Meadowlands, Vernon Downs, and Tioga Downs, as racetracks, is a horizontal agreement because each of the boycott members is a competitor at the same market level: they each provide harness racing track venues.

4

BY THE COURT:

/s/ Joel H. Slomsky
───────────────────
JOEL H. SLOMSKY, J.

---

> Moreover, Plaintiffs have also <u>alleged</u> that the purpose of the group boycott was to exclude Judith Taylor from the market of harness racing tracks. . . . Through these allegations, Plaintiffs have <u>adequately pled at this stage of the litigation</u> that Defendant's participation in a group boycott was a <u>per se</u> violation of Section 1 of the Sherman Act.

(Doc. No. 45 at 54-55 (emphasis added, citations omitted).) And while Defendant is correct that the rule of reason is the default standard applied to allegations of Section 1 violations, the Court focused its analysis in the Opinion on the <u>per se</u> standard because that is the standard under which Plaintiff Judith Taylor's Section 1 allegations were primarily based. (<u>See</u> Doc. No. 48-1 at 3; Doc. No. 17.)

To the extent that Defendant argues the Court made an express finding that only the <u>per se</u> standard applies, that is not the case. (<u>See</u> Doc. No. 50.) To be clear, the Court concluded that Plaintiff Judith Taylor had plausibly <u>alleged</u> a <u>per se</u> violation of Section 1 to survive Defendant's Motion to Dismiss. It did not determine what standard, be it the <u>per se</u> or rule of reason standard, would ultimately apply here. The issue of determining which standard ultimately applies to Plaintiff Judith Taylor's Section 1 claims will be decided only after the parties have conducted discovery and at the summary judgment or trial stages.

Finally, to clarify the Court's determination in the Opinion that "[b]ecause [it] finds that Plaintiffs have plausibly alleged a claim under the <u>per se</u> analysis, it will not assess whether Plaintiffs have also adequately alleged that Defendant's actions violate the rule of reason standard," this conclusion applied only to the Court's Section 1 analysis for the purpose of deciding the Motion to Dismiss the Amended Complaint. (<u>See</u> Doc. No. 45 at 53.) In other words, because the Court found that Plaintiff Judith Taylor had plausibly alleged a <u>per se</u> violation of Section 1, it determined that it need not also assess for the purpose of deciding the Motion to Dismiss whether Plaintiff Judith Taylor had plausibly alleged a violation of Section 1 under the rule of reason standard. <u>See</u> <u>Premier Comp Solutions LLC</u>, 377 F. Supp. 3d at 536-37 ("The second requirement of a Section 1 claim, an unreasonable restraint on trade, is analyzed under <u>either</u> the <u>per se</u> standard or the rule of reason standard.") (emphasis added).

**<u>Conclusion</u>**

For the foregoing reasons, Defendant's Motion for Reconsideration (Doc. No. 48) will be denied.