IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD TAYLOR, JUDITH TAYLOR, | : |
| | : |
| Plaintiffs, | : CIVIL ACTION |
| | : |
| v. | : NO. 2:23-cv-04882-JHS |
| | : |
| JEFFREY GURAL, | : |
| Defendant. | : |

## REPORT OF RULE 26(F) MEETING

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred on April 29, 2025 and submit the following report of their meeting for the court's consideration:

1. **Brief Overview of Claims**

**Plaintiffs' Position:**

Howard Taylor, an attorney and harness racehorse owner, brought this suit against Defendant, Jeffrey Gural, a competitor who not only owns, breeds, and sells harness-racing horses but also has an ownership interest in three of the premier venues for harness horseracing, including the Meadowlands Racetrack (the "Meadowlands"). This case arises from a series of defamatory statements made by Gural and anticompetitive actions taken by Gural to eliminate competition in the world of harness horseracing.

Howard Taylor's defamation and defamation-related claims arise from Gural's false statement in an industry publication accusing Howard Taylor of directing his trainers to use a certain performing enhancing drug on his horses—a false accusation that Gural repeated to others in the industry, including on a phone call with influential leaders in the New Jersey branch of the Standardbred Owners Association of New Jersey. Gural also wrongly accused Howard Taylor of offering legal representation to trainers accused of using PEDs and of fraudulent owning his

horses.  As set forth in the Amended Complaint, Gural's statements are false and the damage to Howard Taylor's reputation and to his finances from Gural's defamatory statements is substantial and continues to grow.

Gural did not stop at defamatory remarks. He unfairly banned Howard Taylor's horses from racing at the Meadowlands and at his other tracks pending an "investigation." When Howard Taylor tried to salvage his investments by selling his interests in several horses to Judith Taylor, his mother, an established racehorse owner in her own right, Gural conspired with the Meadowlands, Vernon Downs, and Tioga Downs to arbitrarily extend the racing ban to horses owned by Judith Taylor.  These actions form the basis of Plaintiffs' tortious interference and unfair competition claims. These claims are premised on Gural's improper conduct—i.e., the smear campaign against Howard Taylor and the banning of Howard and Judith Taylor from racing at the Meadowlands, Vernon Downs, and Tioga Downs. Gural's conduct was born of an improper business motive and was intended to hurt a competitor to Gural's own benefit.

Finally, Judith Taylor's claims under Section 1 of the Sherman Antitrust Act are premised on allegations that Gural conspired with three racetracks to enact a group boycott, as evidenced by one email from Gural's counsel announcing a ban of Judith Taylor's horses simultaneously from all three tracks.

**<u>Defendant's Position:</u>**

Howard Taylor's defamation and defamation-related claims cannot, as a matter of law, succeed.  As an initial matter, discovery will show the four purported defamatory statements made by Jeffrey Gural were true or substantially true and, therefore, not defamatory as a matter of law. The evidence adduced during the Fishman trial and the investigation leading to the Fishman trial is not limited to the 83-page exhibit pleaded in Howard Taylor's complaint, but, instead, includes definitive and voluminous evidence of Howard Taylor's longstanding practice of encouraging and

directing trainers to use PEDs on his horses.  In addition, Howard Taylor's defamation and defamation-related claims cannot succeed because the evidence will show that Howard Taylor was a limited-purpose public figure in connection with the Fishman trial and that Gural did not make any statements with knowledge of their falsity or reckless disregard for the truth.  Regardless of what level of intent is required (actual malice or negligence), however, Gural acted in good faith in making the asserted statements based on objective evidence, precluding the defamation-related claims.  Finally, Howard Taylor has not and cannot prove any specific damages arising from the purported defamation.

Howard Taylor's remaining claims fare no better.  Gural's actions were entirely proper and based on his good faith efforts to eradicate the industry of owners and trainers who use PEDs. Howard Taylor's expectation that he would be able to sell his horses to his own mother to circumvent the ban imposed by the Meadowlands is patently unreasonable.  And both Howard and Judith Taylor cannot prove their asserted tortious interference damages, which are based on pure speculation about whether or not specific horses would or would not have won races.

Finally, Judith Taylor's antitrust claim is fatally flawed for multiple reasons. Among those many reasons are that the alleged horizontal parallel conduct (which is neither a group boycott, nor the type of agreement that warrants antitrust scrutiny) between the non-defendant racetracks cannot, as a matter of law or fact, constitute a per se Sherman Act violation by Mr. Gural, for at least the reason that Ms. Taylor only allegedly competes with Mr. Gural with respect to horse racing.  And under the rule of reason, even if a relevant market is proven by Ms. Taylor, the alleged conduct has plainly pro-competitive justifications, including but not limited to protecting the integrity of harness racing.

**2.        Informal Disclosures**

Pursuant to the Court's Order, initial disclosures pursuant to Rule 26(a)(1) shall be exchanged via email by May 30, 2025.

**3.        Formal Discovery**

It is anticipated that the parties will need to conduct discovery regarding, without limitation, the decision to ban Howard Taylor and Judith Taylor; Gural's communications regarding Howard Taylor and Judith Taylor; Gural's ownership interests in the Meadowlands, Vernon Downs, and Tioga Downs; Gural's ownership interests in racehorses at that compete at the tracks he owns; communications among the racetracks that have banned Howard Taylor and Judith Taylor.  In addition, the parties will need to conduct discovery on Howard and Judith Taylor's history of ownership of horses and contracts with others for co-ownership; their practice in purchasing prescription and non-prescription drugs for horses; their relationships with trainers for the horses; and their claims for damages.

The parties propose the following discovery schedule:

  (a)      Discovery requests will be deemed to have been served on the date of the Rule 16 Conference.

  (b)      Responses to discovery requests will be due 30 days from the Rule 16 Conference.

  (c)      Documents will be produced no later than 60 days from Rule 16 Conference.

  (d)      Depositions will be completed no later than 120 days from the Rule 16 Conference.

  (e)      Fact discovery will close 150 days from the Rule 16 Conference.

  (f)      Data discovery will close 45 days after the end of fact discovery.

4.        **Electronic Discovery**

At this time, the parties do not anticipate any issues regarding the discovery of electronically stored information.

5.        **Expert Witness Disclosures**

Disclosure of expert name and scope of testimony will be due no later than 30 days before the close of fact discovery. Expert reports will be due 60 days after the close of data discovery. Rebuttal expert reports will be due 30 days after the exchange of initial expert reports.

Expert depositions will be completed no later than 30 days after the exchange of rebuttal reports.

6.        **Early Settlement or Resolution**

The parties discussed the possibility of early settlement through ADR.

**Plaintiffs' position:**  At this time, Plaintiffs do not believe pursuing alternative dispute resolution mechanisms would be productive. However, Plaintiffs reserve the right to request an order for mediation during the course of discovery.

**Defendant's position**: Defendant is willing to participate in good faith in mediation so long as Plaintiff is willing to do so.

7.        **Trial**

The parties request anticipate that a trial in this matter would take five weeks. The parties also discussed and respectfully decline the option of a trial before a magistrate judge.

Respectfully submitted,

COZEN O'CONNOR                              GENOVA BURNS LLC

By:   /s/ Michael de Leeuw                    By:   /s/ Lawrence Bluestone
      Michael de Leeuw
      Tamar S. Wise                                  Angelo J. Genova
      3 WTC, 175 Greenwich Street              Lawrence Bluestone
      55th Floor                                      19 West 3rd Street
      New York, NY 10172                         Media, PA 19063
      212-883-4924                                  (973) 533-0777
      twise@cozen.com                            agenova@genovaburns.com
                                                        lbluestone@genovaburns.com

Thomas J. Ingalls
Cozen O'Connor
1200 – 19th St NW, Suite 300
Washington, DC  20036
(202) 471-3411
tingalls@cozen.com

Catherine Yun
Joan Taylor
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 864-8021
cyun@cozen.com
joantaylor@cozen.com

*Attorneys for Plaintiffs*

Brian H. Pandya (pro hace vice)
DUANE MORRIS LLP
901 New York Ave. N.W., Suite 700 E
Washington, DC  20001
(202) 776-7807
BHPandya@duanemorris.com

Sean P. McConnell
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103
(212) 979-1947
spmcconnell@duanemorris.com

*Attorneys for Defendant*

Dated: May 28, 2025