IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HOWARD TAYLOR, et al.,

                  Plaintiffs,

    v.

JEFFREY GURAL,

                  Defendant.

CIVIL ACTION
NO. 23-4882

## OPINION

**Slomsky, J.**                                         **November 19, 2025**

## I.    INTRODUCTION

Before the Court is a Motion to Compel Discovery (Doc. No. 69) filed by Plaintiffs Howard and Judith Taylor. Both Plaintiffs and Defendant Jeffrey Gural own racehorses and Defendant Gural also has an ownership interest in several racetracks. In this case, which involves allegations of performance-enhancing drugs ("PEDs") being administered to racehorses, Plaintiffs seek information on whether Defendant Jeffrey Gural or his trainers received PEDs or gave them to their racehorses. In order to understand what Plaintiffs seek in their discovery motion, a discussion of the allegations in the Amended Complaint is necessary.

### A.  Factual Background

The allegations in this case were previously discussed in the Opinion filed on February 27, 2025. (See Doc. No. 45.)  On May 29, 2024, Plaintiffs Howard Taylor and Judith Taylor (collectively, "Plaintiffs") filed an Amended Complaint against Defendant Jeffrey Gural ("Defendant") alleging that "[b]eginning in 2023, [Defendant] spearheaded a smear campaign intended to undermine, defame, and destroy Howard Taylor's reputation in both the harness racing and equine law industries."  (See Doc. No. 17 at ¶ 6.) The parties are long-time owners of harness-

racing horses who have experienced considerable competitive success.  (Id. at ¶¶ 2–4.)  In addition to owning horses, Defendant is not only a competitor of Plaintiffs, but "has an ownership interest in various racetracks where harness racing occurs, including the Meadowlands Racetrack . . ., Vernon Downs, and Tioga Downs."  (Id. at ¶ 5.)

Following the trial of a Dr. Seth Fishman, a veterinarian who was convicted in 2022 of federal offenses for providing PEDs to persons in the horse racing industry, Howard Taylor was banned from racing his horses at the racetracks partially owned by Defendant due to alleged evidence presented at the trial linking him to the purchase of PEDs.  (Id. at ¶ 8, 71.)

On May 1, 2024, the ban was extended to Judith Taylor, Howard Taylor's mother, after Howard Taylor decided to sell 10 of his harness-racing horses to her in hopes that the horses would be permitted to compete at Defendant's racetracks.  (Id. at ¶ 107.)  The ban did not just exclude the 10 horses Judith Taylor had purchased from Howard Taylor, but also excluded other horses that she had previously owned.  (Id. at ¶ 111.)

As a result of the ban, and its effect on their ability to engage in competitive racing, Plaintiffs filed an Amended Complaint alleging that Jeffrey Gural, among other things: (1) committed an anti-trust violation against Judith Taylor under the Sherman Act (Count VII); (2) engaged in unfair competition against Howard Taylor under state law (Count XI); (3) tortiously interfered with contractual relationships of Howard Taylor under state law (Count V); and (4) tortiously interfered with prospective economic advantage against Judith Taylor under state law (Count XII).  (See Doc. No. 17.)

Plaintiffs now seek in discovery the following three requests for production of documents:

36. All documents and communications regarding any horse in which [Jeffrey Gural] ha[s] an ownership interest that has ever tested positive for a performance enhancing drug—whether that testing was done by a regulator or a private tester.

37. All documents and communications regarding any trainer who has ever trained one of [Jeffrey Gural's] horses and has ever been found to have administered a performance enhancing drug on a horse.

38. All documents and communications regarding all pharmaceuticals or other substances [Jeffrey Gural] or [Jeffrey Gural's] trainers have ordered for any of [Jeffrey Gural's] horses since 2015.

(<u>See</u> Doc. No. 69-2.)

## II.    ANALYSIS

Plaintiffs argue the requested information is necessary because it is relevant to the claims and defenses in this case for two reasons.  First, the discovery could bear on the rebuttal of Defendant's affirmative defense to Plaintiff Judith Taylor's Antitrust Claim.  Defendant raised the affirmative defense that his actions were justified for a non-competitive reason—his desire to rid the horse-racing industry of PEDs, which would make harness-racing competitive because all horses would race without a horse having an advantage due to the use of PEDs.  Second, the discovery could help undermine Defendant's same affirmative defense to Plaintiffs' claims for tortious interference and unfair competition, that is, Defendant's claim that his action in banning the Taylors from competitive racing was justified. As such, Defendant opposes responding to the three document requests.  The Court will address Plaintiffs' arguments in turn below.

### A.  Antitrust Claim (Count VII)

Judith Taylor contends that this information sought in the above three discovery requests is relevant to her antitrust claims in Count VII of the Amended Complaint, which alleges a violation of Section 1 of the Sherman Act.  Plaintiffs argue that "if Gural allowed the use of PEDs on his own horses, or if his trainers have otherwise used PEDs, then his pro-competitive justification" of "eliminating PEDS from the sport" is pretextual.  (<u>See</u> Doc. No. 69-1 at 10.)

In this regard, Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several

3

States[.]" 15 U.S.C. § 1.  The Supreme Court "has never taken the literal approach to [§ 1's] language.  Rather the Court has repeated time and again that § 1 outlaw[s] only unreasonable restraints."  In re Processed Egg Prods. Antitrust Litig., 962 F.3d 719, 726 (3d Cir. 2020) (citing Leegin Creative Leather Prods., Inc., v. PSKS, Inc., 551 U.S. 877, 884 (2007)).  When determining whether the defendant imposed an unreasonable restraint on trade, the court should analyze the defendant's actions "under either the per se standard or the rule of reason standard," depending on the type of restraint alleged.  Premier Comp Solutions LLC v. UPMC, 377 F. Supp. 3d 506, 536–37 (W.D. Pa. 2019).  Although the rule of reason analysis is the default mode of analysis, the ultimate decision of the applicable standard is routinely decided after discovery either at the summary judgment stage or before trial.  See, e.g., Int'l Constr. Prods. LLC v. Caterpillar Inc., 419 F. Supp. 3d. 791, 807 (D. Del. 2019).

Because Plaintiffs submit in their Motion that the relevancy of the requested documents is to rebut Defendant's pro-competitive objective, which would arise from the removal of PEDs in the horse-racing industry, the Court will focus on the rule of reason analysis.[1]  The rule of reason requires the fact-finder to "weigh[] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition."  United States v. Brown Univ., 5 F.3d 658, 668 (3d Cir. 1993) (citing Continental T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 49 (1977)).  Under a burden-shifting framework, the plaintiff bears the initial burden of showing that the alleged combination or agreement produces adverse, anti-competitive effects within the relevant product and geographic markets.  Brown Univ., 5

---

[1]  In their Motion to Compel, Plaintiffs maintain that a per se analysis applies and that no pro-competitive justification is possible when a per se violation is found.  (Doc. No. 69-1 at 7, n.1.) However, Plaintiffs also acknowledge that the final determination of which standard applies is made at the summary judgment stage or before trial.  (Doc. No. 49 at 3–4.)

F.3d at 668.  If a plaintiff meets the initial burden of adducing adequate evidence of market

power or actual anti-competitive effects, the burden shifts to the defendant to show that the

challenged conduct promotes a sufficiently pro-competitive objective.  Id. at 669.  If the

defendant offers a pro-competitive objection, then the plaintiff must demonstrate that the

restraint is not reasonably necessary to achieve the stated objective.  Id.

### i.  Request Nos. 36–38

Plaintiffs argue that the requested documentation is relevant in order to challenge the

legitimacy of Defendant's pro-competitive justification to Plaintiff Judith Taylor's antitrust

claim.  (Doc. No. 69-1 at 7–8.)  Defendant disagrees, contending that information sought is not

relevant, and even if Plaintiffs were entitled to discovery to rebut the pro-competitive

justification, discovery should be limited to the "influence of PEDs in the overall market and

whether banning PED users is pro-competitive or not."  (Doc. No. 72 at 17–18.)

Documentation involving whether any of Defendant's horses have tested positive for PEDs

and records relating to the acquisition of PEDs by Defendant or his trainers are relevant to the

antitrust claim. The Third Circuit has noted that a plaintiff has the burden of presenting evidence

that raises a material dispute of fact regarding the procompetitive justifications offered by a

defendant.  Brown Univ., 5 F.3d at 678–79.  Plaintiff Judith Taylor's antitrust claim may require

her to show that Defendant's pro-competitive justification was pretextual.  See In Re Suboxone

(Buprenorphine Hydrochloride & Naloxone) Antitrust Litig., 622 F. Supp. 3d 22, 50 (E.D. Pa.

2022) (finding that "Plaintiffs [had] come forth with countervailing evidence that [Defendant's]

actions were…a mere pretext for the anticompetitive conduct); In re Wellbutrin XL Antitrust

Litigation, 133 F. Supp. 3d 734, 760 (E.D. Pa. 2015) (explaining that a plaintiff could meet its

burden of rebutting a defendant's procompetitive justification by presenting evidence that the

"pro-competitive justifications were 'unnecessary', 'illusory,' or 'pretextual.'"); King Drug Co. of Florence, Inc. v. Cephalon, Inc., 88 F. Supp. 3d 402, 419 (E.D. Pa. 2015) (holding that because Plaintiffs "have presented sufficient evidence to rebut Defendants' procompetitive justifications," a reasonable jury could conclude that the justifications were pretextual).

While the document requests are therefore relevant, discovery must be "proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Defendant asserts that the requests for every communication and document regarding over two-hundred (200) horses over the span of a decade allegedly testing positive for PEDs, including communications with any trainer that had a positive PED test are irrelevant, overinclusive, and disproportionate to the needs of the case (See Doc. No. 72 at 23–24.)  The Court agrees, but these arguments do not end the analysis.

Here, the antitrust injury resulting in financial harm to Judith Taylor would arise on the date of the ban.  Because the parties were on equal footing prior to the date of the ban, only in the hypothetical sense that if they were using PEDs on their racehorses prior to May 1, 2024 they would be in the same position, any anticompetitive injury would have begun on or after May 1, 2024 when Judith Taylor was banned.  In other words, and without making any findings, if Defendant was using PEDs on his horses after the ban—and not before—that would undermine the legitimacy of his pro-competitive justification, which was to eliminate PEDs from the industry.  If Defendant was using PEDs on or after May 1, 2024, he would have a competitive advantage over race-horse owners who did not use PEDs.  Therefore, the Court will narrow

Plaintiff's Document Requests Nos. 36 to 38 to be proportional to the needs of the case as follows:

> 36. **Documents sufficient to show any horse** in which [Jeffrey Gural] ha[s] an ownership interest that has ever tested positive for a performance enhancing drug **after May 1, 2024.**

> 37. All documents and communications regarding any trainer who has ever trained one of [Jeffrey Gural's] horses and has ever been found to have administered a performance enhancing drug on a horse **after May 1, 2024.**

> 38. All documents and communications regarding all pharmaceuticals or other substances [Jeffrey Gural] or [Jeffrey Gural's] trainers have ordered for any of [Jeffrey Gural's] horses **after May 1, 2024.**

## B. Tortious Interference Claims (Counts V and XII) and Unfair Competition Claim (Count XI)

Plaintiffs also contend that the documents requested are relevant to their tortious interference and unfair competition claims because they could help undermine Defendant's affirmative defense of justification on those claims too. First, Plaintiffs reason that "[b]ecause lack of justification is one of the elements of a tortious interference action," if Defendant's "own horses and trainers have used PEDs, then he cannot credibly claim that his only motive for interfering with Plaintiffs' existing and prospective contracts and business relations is to protect the integrity of harness-racing." (Doc. No. 73 at 10, 14.) Second, Plaintiff Howard Taylor advances the same reasoning for his unfair competition claim because tortious conduct can form the basis of an unfair competition claim under Pennsylvania law. (Doc. No. 69-1 at 15.)

In his response, Defendant argues that the requested documents are irrelevant because Defendant's justification "collapses into the merits of" the tortious interference and unfair competition claims. (Doc. No. 72 at 21.) This argument is discussed more fully, <u>infra</u>.

### i.    Tortious Interference Claims

The Court will first address the relevance of the requested information to Plaintiff Howard Taylor's tortious interference with contractual relationships claim (Count V).  Under Pennsylvania law, to state a claim for tortious interference with a contractual relationship, a plaintiff must allege the following: (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct. Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 98 (Pa. Super. Ct. 2009).

In the Opinion dated February 27, 2025, the Court held that because Plaintiff Howard Taylor plausibly alleged that Defendant engaged in improper defamatory conduct—that Defendant knowingly made false statements that Howard Taylor had told his trainers to use PEDs—he established the absence of a privilege or justification on the part of Defendant in interfering with his contracts.  (See Doc. No. 45 at 36.)  In this regard, the only issue is whether Defendant's statements involving Plaintiff were truthful, not whether Defendant's horses were administered PEDs.  As such, the requested information is not relevant to Plaintiff Howard Taylor's tortious interference claim.

Turning to Plaintiff Judith Taylor's tortious interference with prospective economic advantage claim (Count XII), unlike Plaintiff Howard Taylor's claim for tortious interference with contractual relationships, the requested information is relevant. A claim for tortious interference with prospective economic advantage requires a plaintiff to show the absence of privilege or justification on the part of the defendant. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997).  However, "Pennsylvania has adopted section 768 of the Restatement (Second)

of Torts, which recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with others' prospective contractual relationships." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 215 (3d Cir. 2009). A competitor does not improperly interfere with their competition's prospective contractual relationships under § 768 if the actor does not employ wrongful means. RESTATEMENT (SECOND) OF TORTS § 768 (b) (Am. L. Inst. 1979). Courts have "interpreted the wrongful means element to require that a plaintiff, to be successful in a tortious interference action, demonstrate that a defendant engaged in conduct that was actionable on a basis independent of the interference claim. . . . that is, for conduct to be wrongful, it must be actionable for a reason independent from the claim of tortious interference itself." Acumed, 561 F.3d at 215.

In the Opinion dated February 27, 2025, the Court held that because Plaintiff Judith Taylor "alleged wrongful conduct by Defendant that is actionable for a reason independent from her claim of tortious interference, namely that Defendant violated Section 1 of the Sherman Act, she plausibly plead[] the absence of privilege or justification on the part of Defendant." (Doc. No. 45 at 59.) Therefore, because the Court concluded, supra, that the requested information is relevant to Plaintiff Judith Taylor's antitrust claim, it is relevant to her tortious interference claim too. Even though the information is relevant, the interference with her prospective economic advantage also began on May 1, 2024, the date of the ban. Before that date, there was no interference. Therefore, similar to the Sherman Act claim, Plaintiff Judith Taylor is entitled to receive the requested discovery as narrowed above by the Court.

### ii.  Unfair Competition Claim

Plaintiff Howard Taylor also has a claim for unfair competition (Count XI). Pennsylvania courts recognize claims for unfair competition "where there is evidence of, among other things . .

. misrepresentation, [and] tortious interference with contract." <u>Synthes (U.S.A.) v. Globus Medical, Inc.</u>, No. 04-CV-1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005). Since the Court previously held at the motion to dismiss stage that Howard Taylor adequately stated a claim for unfair competition because there is evidence of tortious interference with a contract, his unfair competition claim relies upon his ability to prove his tortious interference claim. (<u>See</u> Doc. No. 45 at 56–57.) In this regard, the requested information is irrelevant to Plaintiff Howard Taylor's unfair competition claim for the same reasons explained by the Court in discussing his tortious interference claim, <u>supra</u>.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Production of Documents (Doc. No. 69) will be granted in part and denied in part. An appropriate Order follows.