May 12, 2026

**Jason A. Kurtyka**
Cozen O'Connor
Direct Phone   215-665-4167
jkurtyka@cozen.com

**Lawrence Bluestone**
Genova Burns LLC
Direct Phone   973.535.4434
Lbluestone@GenovaBurns.com

**VIA CM/ECF**

The Honorable Joel H. Slomsky
United States District Court for the Eastern
District of Pennsylvania
13614 U.S. Courthouse
601 Market Street Philadelphia, PA 19106

**Re:    *Howard Taylor, et al. v. Jeffrey Gural*, 2:23-cv-04882-JHS**

Dear Judge Slomsky:

The parties, Plaintiffs Howard and Judith Taylor and Defendant Jeffrey Gural, through their respective counsel, write this joint letter to request the Court's assistance in resolving a discovery issue.

The parties have reached an impasse regarding Defendant's withholding of 23 responsive communications on the grounds of the attorney-client privilege or work product doctrine (the "Privilege Dispute"). As set forth more fully below, the parties have exchanged multiple letters regarding the Privilege Dispute but were unable to resolve it during a meet-and-confer videoconference. Plaintiffs respectfully request that the Court review the documents *in camera* to resolve the Privilege Dispute.  Defendant contends that the descriptions in his privilege log and his counsel's multiple letters clarifying the basis for his privilege assertions, provide sufficient, detailed information to substantiate Defendant's privilege assertions, obviating the need for *in camera* review. If the Court deems it necessary, the parties request a telephone conference or that the Court set a schedule for further briefing.

## I.    Background and Efforts to Resolve the Privilege Dispute

On February 3, 2026, Defendant served a privilege log cataloging 1,293 documents and communications that were withheld or produced with redactions on the grounds of the attorney-client privilege or work product doctrine.  The privilege log was provided on behalf of Defendant and New Meadowlands Racetrack LLC ("NMR") in response to a subpoena served by Plaintiffs on that entity.[1]  On March 17, 2026, Plaintiffs sent Defendant a letter (**Tab A**) identifying 75 entries on Defendant's privilege log that Plaintiffs contended were not privileged, including documents that either (a) identified no attorney as part of the communication or (b) included third parties that Plaintiffs contended would destroy the attorney-client privilege. In a March 27, 2026 letter, Defendant clarified his designations and served an amended privilege log. (**Tab B.**) But there were still some unresolved issues, and on April 8, 2026, Plaintiffs requested additional explanations for a small set of 23 communications that either: (i) involved no attorneys or (ii) comprised email discussions among non-lawyers forwarding a prior email from an attorney. Plaintiffs requested production of these specific documents. (**Tab C**.) The privilege log entries for

---

[1] References to "Defendant's privilege assertions" include NMR's privilege assertions.

The Honorable Joel H. Slomsky
May 12, 2026
Page 2

those 23 emails are identified at **Tab D**. In an April 20, 2026 letter, Defendant maintained his claim of privilege over the 23 communications, further explaining the basis for his assertion of the attorney-client privilege and work product doctrine. (**Tab E**.) The parties met and conferred via videoconference regarding the Privilege Dispute on April 30, 2026, but were unable to reach a resolution.

## II.    The Challenged Privilege Claims

The challenged privilege designations, identified at **Tab D,** fall into two categories: (i) communications that do not involve counsel (6 emails)[2]; and (ii) communications between non-lawyers following a forwarded email from counsel (17 emails).[3] Plaintiffs have challenged these designations in several communications. Defendant's justifications for withholding them are set forth at **Tab D**, at Entry Nos.1-6 (emails that do not involve counsel) and **Tab D**, at Entry Nos. 7-23 (communications forwarding email from counsel).  Defendant provided further description and explanation of the basis for their assertions of the attorney-client privilege in counsel's March 27, 2026 and April 20, 2026 letters (**Tabs B & E**), grouping the communications into different email chains referred to in the letters as Categories II.K, L, M, O, R and S (**Tab B** at p. 6-9).

## III.    The Parties' Respective Positions on the Privilege Disputes

A.    <u>Plaintiffs' Position</u>: **Defendant's Privilege Descriptions Are Insufficient to Justify Withholding the Communications. Defendant Should Produce the Documents, or, at a Minimum, the Court Should Review them *in Camera*.**

1.    **Legal Standard Applicable to Defendant's Burden to Justify Privilege Assertions**

***Attorney-Client Privilege***. The elements of the attorney-client privilege require: "(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007 (quoting the *Restatement (Third) of the Law Governing Lawyers* § 68 (2000)). Because "the [attorney-client] privilege obstructs the truth-finding process," it should be "applied only where necessary to achieve its purpose." *In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 117 (E.D. Pa. 2011) (quoting *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir.2007) and citing *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1423 (3d Cir.1991) (construing the privilege narrowly)). To this end, the attorney-client privilege "protects ***only*** those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (emphasis added). While privilege protects information the client furnishes to the attorney for advice and the attorney's advice, it applies only to the communication to itself and not the underlying facts themselves. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 395 (1981); *see also In re Domestic Drywall Antitrust Litig.*, 2014 WL 5090032, at \*2 (E.D. Pa. Oct. 9, 2014) ("The privilege applies only to legal advice, and not where the lawyer provides non-legal business

---

[2] *See* **Tab D**, Entry Nos. 1-6 (PRIV000724; PRIV000782; PRIV001082; PRIV001127; PRIV001183; PRIV001212).

[3] *See* **Tab D**, Entry Nos. 7-23 (PRIV000544; PRIV000575; PRIV000628; PRIV000636; PRIV000661; PRIV000734; PRIV000747; PRIV000764; PRIV000807; PRIV000822; PRIV000836; PRIV000839; PRIV000856; PRIV000860; PRIV000896; PRIV000918; PRIV001220).

The Honorable Joel H. Slomsky
May 12, 2026
Page 3

---

advice."). "Facts are discoverable, [even though] the legal conclusions regarding those facts are not." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994).

*Work Product Doctrine*. The work product doctrine applies only where, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990); *see also* Fed. R. Civ. P. 26(b)(3). To answer this question, "[c]ourts in the Third Circuit have applied a two-part inquiry: (1) determining at what point in time litigation could reasonably have been anticipated and (2) ensuring that the material in question was produced because of the prospect of litigation and for *no other purpose*." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 483 (E.D. Pa. 2005) (emphasis added).

*Defendant's Burden*. "The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege." *In re Grand Jury*, 603 F.2d 469, 474 (3d Cir. 1979) (citation omitted); *see also Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir.1982) ("The burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine."). "The party asserting the privilege must show, by record evidence such as affidavits, sufficient facts as to bring the [communications at issue] within the narrow confines of the privilege." *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 688 (E.D. Pa. 1986) (citation omitted).

> **2.    The Withheld Documents Appear Not to be Protected by Either the Attorney-Client Privilege or the Work Product Doctrine, and They Should be Produced, or—at a Minimum—Reviewed by the Court *in Camera*.**

The communications identified at **Tab D** do not appear privileged. Plaintiffs of course cannot say for certain because Defendant has withheld these emails under vague, self-serving privilege justifications. *See* **Tab D**. But assertions of attorney-client privilege or work-product protection are "not satisfied by mere conclusive or *ipsa dixit* assertions." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) (quoting *Am. Health Sys., Inc. v. Liberty Health Sys.*, 1991 WL 42310, at *5 (E.D. Pa. Mar. 26, 1991)).

Here, Defendant's own privilege descriptions convey that these communications were sent for non-legal reasons (banning Plaintiffs and others from the Meadowlands and other racetracks) and involve discussion of non-privileged facts (the who, what, when, where, and why of the bans). These are emails among businesspeople discussing business decisions—and they are not privileged. At a bare minimum, the facts relied upon to make those decisions (namely whether to ban Plaintiffs and others from racing at the Meadowlands and other racetracks) are not privileged.

Moreover, it is striking that Defendant claims work product protection over 20 of the 23 emails. Yet, he fails to differentiate his work product justification from his attorney-client privilege assertions—simply asserting that these emails were also drafted in anticipation of litigation without further detail. This vague description fails to meet Defendant's burden to demonstrate that these communications were prepared **for no other purpose** than litigation, as needed to support a work product designation. Indeed, as Defendant acknowledges, the emails were sent in connection with the ban of Plaintiffs and others—a business decision made by Gural. That litigation eventually resulted from the anti-competitive and illegal ban does not mean the work

The Honorable Joel H. Slomsky
May 12, 2026
Page 4

product doctrine retroactively shields these communications from discovery. Defendant's use of the privilege to obstruct Plaintiffs' discovery into the basis for the ban should not be permitted.

Below is a more specific response as to the challenged designations:

***Communications with no attorney involvement***. To the extent Defendant seeks to justify withholding communications that do not involve ***any*** attorneys, that is simply against the weight of the law. "Documents lacking any substantive attorney involvement are not privileged." *SmithKline Beecham Corp.*, 232 F.R.D. at 477. While "privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys," *Se. Pa. Transp. Auth. v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) (citation omitted), a party cannot "refuse to disclose facts simply because that information came from a lawyer," *Rhone-Poulenc Rorer*, 32 F.3d at 864.

- **PRIV000724; PRIV000782**. These emails, in which a New Meadowlands employee summarizes a conversation with Mr. Genova, appear to involve non-privileged facts. Defendant acknowledges as much by asserting that the nature of the conversation involved "the investigation and potential bans" from the Meadowlands. **Tab B**, § II.M. And the work product assertion fails because, based on this description, the primary purpose of the email had to do with the "investigation and potential bans," not the litigation that resulted. *See Rockwell*, 897 F.2d at 1266.

- **PRIV001082; PRIV001127; PRIV001183**. Defendant asserts these February 2024 emails among non-lawyers are privileged because they "discuss[] information to be provided to counsel." **Tab B**, § II.O. Yet there is no reassurance in the privilege log description that about the nature of this "information"—and whether it consisted of non-privileged facts. *See Rhone-Poulenc Rorer*, 32 F.3d at 864. And, like the other emails, the work product doctrine does not protect these emails because their primary purpose was the "investigation" and "ban," as opposed to litigation. *See Rockwell*, 897 F.2d at 1266.

- **PRIV001212.** Defendant's privilege assertion over this email acknowledges that it contains non-privileged facts. Defendant claims that the email discusses legal advice "regarding horses sold by Howard Taylor to Judith Taylor during the pendency of this litigation." **Tab B**, § II.R. As the Amended Complaint alleges, on May 1, 2024, Defendant engaged in an anti-competitive conspiracy to ban Judith Taylor from the Meadowlands and the other tracks after she purchased Howard Taylor's horses. *See* ECF No. 17, at 19-20 (¶¶ 111-15). It is highly likely (though Plaintiffs cannot tell from the vague description) that this April 17, 2024 email discussing Judith Taylor's purchase of Howard Taylor's horses contains—at a minimum—discoverable facts such as horse names, whether to ban the horses, why the horses were banned, and the scope of the ban. At a minimum, these facts are not privileged and cannot be withheld. *See Rhone-Poulenc Rorer*, 32 F.3d at 864. Nor does the work product doctrine apply merely because the email was sent during (and resulted in additional) litigation because the email appears to have had a substantial non-litigation purpose, namely the extension of a business ban at the Meadowlands and other racetracks. *See Rockwell*, 897 F.2d at 1266.

***Communications forwarding an email from counsel***. All 17 of these emails in this category originate from an underlying email from Mr. Genova forwarded for discussion among

The Honorable Joel H. Slomsky
May 12, 2026
Page 5

non-lawyer businesspeople.[4] While the underlying email from Mr. Genova may well be privileged (although Plaintiffs cannot tell from the vague privilege log description), any privilege that would attach to that initial email does not automatically extend to emails among non-lawyers forwarding and discussing various aspects of that email. "[E]mployees may share legal advice received from attorneys with one another 'so that the corporation may be properly informed of legal advice and act appropriately.'" *Fed. Trade Comm'n v. Abbvie, Inc.*, 2015 WL 8623076, at *2 (E.D. Pa. Dec. 14, 2015) (quoting *Se. Pa. Transp. Auth. v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 258-59 (E.D. Pa. 2008)). But for the attorney-client privilege to apply, "the corporation 'must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.'" *Id.* at *3 (quoting *Kramer v. Raymond Corp.*, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992)). Moreover, if the non-attorneys are discussing factual matters contained in the email as opposed to the legal advice itself, those communications would not be covered by the attorney-client privilege.

In the vague privilege log descriptions, most of which claim protection under both the attorney-client privilege **and** the work product doctrine, Defendant has failed to demonstrate that the primary purpose of these communications **among non-attorney businesspeople** was to communicate legal advice. Indeed, Defendant's privilege log descriptions undercut any suggestion that these communications were for the purpose of disseminating legal advice: Defendant claims these emails among non-lawyers discussed a purported "investigation" and the "ban" of Plaintiffs and/or others from racing at the Meadowlands following the Fishman criminal trial. The ban was a **business decision** about who could and who could not race at the Meadowlands and other racetracks. One would expect these emails to include discussions about facts surrounding the decision to enact the ban—who was banned, why they were banned, where the ban extended, and for how long they were banned. All of this information relied upon in enacting the ban is simply not covered by the attorney-client privilege. *See Abbvie*, 2015 WL 8623076, at *5 (requiring production of attorney email containing discoverable facts because an unprivileged "fact[ ] provided by an attorney that do[es] not reflect client confidences" (quoting *Samahon v. U.S. Dep't of Justice*, 2015 WL 857358, at *10 (E.D. Pa. Feb. 27, 2015)). It is also at the center of this litigation.

Defendant also fails to explain why the work product doctrine should shields these emails from production. Material may receive work product protection if it was prepared "**because of** the prospect of litigation." *Rockwell*, 897 F.2d at 1266 (emphasis added). But the doctrine does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). Defendant's own justification reveals that these emails are not work product. They were drafted in connection "with investigation and potential bans relating to PED usage." As far as Plaintiffs can surmise from the privilege log descriptions, that was their primary purpose, *not litigation*. *See LifeScan, Inc. v. Smith*, 2024 WL 4913027, at *9 (D.N.J. May 16, 2024) ("Documents created for other purposes that prove useful in subsequent litigation are not attorney work-product, while documents that are routinely prepared in the ordinary course of business are outside the scope of work-product protection.").

### 3.    *In Camera* Review Is Appropriate.

Plaintiffs respectfully request that this Court order the production of these documents or, at a minimum, conduct a review the communications identified at **Tab D** *in camera* and make a

---

[4] *See* **Tab D**, Entry Nos. 7-23

The Honorable Joel H. Slomsky
May 12, 2026
Page 6

determination regarding Defendant's privilege assertions. *See Santer v. Teachers Ins. & Annuity Ass'n,* 2008 WL 821060, at *1 n.1 (E.D. Pa. Mar. 24, 2008) ("[*I*]n camera review is the appropriate method for resolving privilege disputes." (citing *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir.1988))).

> **B.  Defendant's Position.  The disputed emails are protected by the attorney-client privilege and work product doctrine and Defendant's detailed description, supplemented by counsel's letters clarifying any purported ambiguity, satisfy Defendant's burden to demonstrate the applicability of these privileges.**

The court is asked to resolve a dispute created out of whole cloth by Plaintiffs' deliberate misreading of Defendant's privilege log descriptions and the detailed amplification of these descriptions in Defendant's March 27 and April 20, 2026 letters.  The Court is well aware of the basic elements of the attorney-client privilege and work product doctrine and Defendant will not rehash them.  We note, however, that in connection with Plaintiffs' state-law claims, Pennsylvania law will govern the attorney-client privilege. Fed. R. Evid. 501; *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994).  Under Pennsylvania law, the attorney-client privilege applies in a "two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). "The attorney-client privilege exists to foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 376 (Pa. Super. 2012) (quotation and citation omitted).

As Plaintiffs note, the party asserting a privilege bears the burden of demonstrating its applicability.  *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 193 (E.D. Pa. 2004).  As a general matter, "the party asserting the privilege may carry its initial burden by submitting a properly documented privilege log." *Lane v. State Farm Mut. Auto. Ins. Co.*, No. 3:14-CV-O1045, 2015 U.S. Dist. LEXIS 64679, at *12 (M.D. Pa. May 18, 2015).  Indeed, the purpose of requiring a privilege log is to reduce the need for and attendant burdens of *in camera* review.  *MDL Capital Mgmt. v. Fed. Ins. Co.*, No. 05-cv-1396, 2006 U.S. Dist. LEXIS 106246, at *3 (W.D. Pa. Mar. 22, 2006), *report and recommendation adopted*, 2006 U.S. Dist. LEXIS 106245 (W.D. Pa. May 2, 2006).

As to the work product doctrine, although Defendant bears the burden of showing the materials were prepared in anticipation of litigation, after this burden is met, "the party seeking production may obtain discovery 'only upon a showing that the party. . . has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.'" *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (quoting Fed. R. Civ. 26(b)(3)).

As explained in further detail below, the detailed explanation for the basis of Defendant's privilege assertions in Defendant's privilege log, as supplemented by Defendant's March 27 and April 20, 2026 letters (**Tabs B & E**), sustain Defendant's burden to show the applicability of the attorney-client privilege and work product doctrine to these documents.  Defendant's counsel, officers of this court, made detailed representations about the contents of these communications demonstrating the applicability of the attorney-client privilege and work product doctrine. Plaintiffs' speculation second guessing these representations and arguing that the communications may include things beyond what counsel represented does not justify *in camera* review.  *Lane*, 2015

The Honorable Joel H. Slomsky
May 12, 2026
Page 7

U.S. Dist. LEXIS 64679, at *9 ("[T]he hypothetical possibility that representations made by a duly licensed attorney and officer of this court could be found to be utter fabrications is insufficient to carry Plaintiff's burden in overcoming the privilege. Nor does this Court believe it is appropriate to order the Defendant to submit these redacted materials for in camera inspection simply because the Plaintiff does not trust counsel's representations.").

Indeed, if the Court accepts Plaintiffs' logic, the parties would need to revisit most of Plaintiffs' own privilege designations. Plaintiffs' Amended Privilege Log (**Tab F**) includes numerous entries involving legal advice about "news articles about a ban from racetracks" (e.g., p. 1, TAYLOR003921, TAYLOR004102), or legal advice regarding "ban from racetracks and Defendant's statements" (e.g., p. 2, PRIV0001 and PRIV0002). Defendant has accepted the representations of Plaintiffs' counsel that these emails contain legal advice, but they no doubt also discuss non-privileged factual information, including about the news article or Defendant's statements. Defendant will be able to depose Plaintiffs and question them about these underlying facts just as Plaintiffs will be able to depose Defendant and NMR employees about facts underlying the privileged communications discussed below. But to the extent the Court accepts Plaintiffs' arguments, it would lead to a slippery slope that will result in Defendant requesting *in camera* review of numerous of Plaintiffs designated documents as well.

        **1.**    **Plaintiffs' unsupported inferences that the emails without counsel involved business decisions or discussed non-privileged facts is contrary to counsel's representations in the privilege log and subsequent letters and must be rejected.**

- **PRIV000724; PRIV000782**. As explained to Plaintiffs, PRIV000724 and PRIV000782 are duplicates of the same document and, although the email does not include counsel, the email's sender, Brice Cote, NMR's Director of Investigations, summarizes his phone conversation with counsel (Angelo Genova, Esq. and Nick Amato, Esq. of Genova Burns LLC) and describes the legal advice and strategy provided in that phone conversation with respect to potential bans of individuals from the racetrack relating to PED usage following release of trial evidence from the Fishman/Giannelli trial. (*See* Amended Priv. Log (**Tab D**) Entry No. 1; March 27, 2026 Letter at p. 7, § II.M (**Tab B**).) The email was sent by Mr. Cote to confidentially transmit counsel's legal advice to the highest executives at NMR: Defendant, NMR's Chief Executive Officer (CEO) and Jason Settlemoir, NMR's General Manager and Chief Operating Officer (COO).

As Plaintiffs concede (*see supra* at p. 4-5), "[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. In the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys. Moreover, documents subject to the privilege may be transmitted between non-attorneys so that the corporation may be properly informed of legal advice and act appropriately." *Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005); *see also Moffatt v. Wazana Bros. Int'l*, No. 14-1881, 2014 U.S. Dist. LEXIS 151326, at *4 (E.D. Pa. Oct. 23, 2014) ("Courts have consistently held that communications relaying legal advice provided by corporate counsel among non-attorney corporate employees who share responsibility for the subject matter underlying the consultation are privileged."). That is precisely what happened in this email. Mr. Cote confidentially relayed the legal advice provided by Mr. Genova and Mr. Amato to NMR's top executives.

The Honorable Joel H. Slomsky
May 12, 2026
Page 8

Plaintiffs speculate that this email "appear[s] to involve non-privileged facts. Defendant acknowledges as much by asserting that the nature of the conversation involved 'the investigation and potential bans' from the Meadowlands." (*Supra* at p. 4.)  But as indicated in Defendant's privilege log and letters, the emails discuss *legal advice* provided by counsel regarding the release of evidence from the Fishman/Giannelli trial in connection with the potential bans of individuals of the racetrack.  NMR (and Defendant) are entitled to legal counsel regarding their announcement of bans relating to PEDs, an issue fraught with potential legal concerns, as this case demonstrates.  Plaintiffs' apparent distrust of counsel's representation is not a basis to review this document *in camera. Lane*, 2015 U.S. Dist. LEXIS 64679, at *9.

As to the work product doctrine, NMR rightfully anticipated litigation with respect to the announcement of bans of individuals because of PED use.  NMR had previously been sued by individuals who were banned from the racetrack in similar circumstances.  (*See* **Tab G** (Email dated December 29, 2021 with Press Release attaching Judgment and Order dismissing action by eight owners banned from racetrack for using Rene Allard, a trainer indicted for using PEDs) (GURAL00374168).) And, of course, NMR was proven correct a month later when Plaintiff filed this lawsuit. To the extent the email contains factual discussion, Plaintiffs make no showing that they cannot obtain the substantial equivalent of the materials through other means, such as, by deposing the individuals in the email about the facts underlying the investigation. *See, e.g.*, *Borgia v. State Farm Mut. Auto. Ins. Co.*, No. 14-3149, 2014 U.S. Dist. LEXIS 123180, at *16 (E.D. Pa. Sep. 3, 2014) (plaintiffs fail to demonstrate substantial need for work product material because they could depose individuals to obtain the information they seek); *Deshields v. Mt. Laurel Resort & Spa*, No. 3:09-CV-2125, 2010 U.S. Dist. LEXIS 116522, at *6 (M.D. Pa. Nov. 2, 2010) (ability to depose individuals in documents is a "substantial equivalent" precluding showing of "substantial need" under Rule 26(b)(3)).

- **PRIV001082; PRIV001127; PRIV001183**.  Once again, Plaintiffs description of these communications ignores the description and representations made by Defendant's counsel about the nature of the discussions and makes unwarranted inferences in an attempt to pierce the privilege.  These emails are from the same chain and, as explained to Plaintiffs, NMR's high-level executives, Mr. Cote (Director of Investigations), Defendant (CEO), Mr. Settlemoir (COO), and Nick Salvi, Stake's Consultant for NMR, are confidentially discussing legal advice from counsel (Mr. Genova) and gathering additional information to be provided to Mr. Genova to secure further legal advice regarding potential bans of individuals from the racetrack relating to PED usage following release of trial evidence from the Fishman/Giannelli trial. Documents not authored by or addressed to an attorney can still be privileged if they are intended to "relay information requested by attorneys." *Smithkline*, 232 F.R.D. at 477. Further, contrary to Plaintiffs' suggestion, although the facts underlying counsel's legal advice are not privileged, "'[d]ocuments sent to or prepared by counsel incorporating information and facts for the purpose of obtaining or giving legal advice, planning trial strategy, etc. are protected from compelled disclosure.'" *United States ex rel. Lord v. NAPA Mgmt. Servs. Corp.*, No. 3:13-2940, 2019 U.S. Dist. LEXIS 194063, at *43 (M.D. Pa. Nov. 7, 2019) (quoting *Andritz Sprout-Bauer v. Beazer East*, 174 F.R.D. 609, 663 (M.D. Pa. 1997) (alterations omitted)).

Recognizing this principle, in *Lord*, the Court rejected an argument similar to Plaintiffs' argument in this case, finding that any purely factual information in the privileged communication "cannot be extracted from the privileged communications . . . without divulging privileged communications." *Lord*, 2019 U.S. Dist. LEXIS 194063, at *43.  Likewise, here, the communications are privileged because although they may contain some factual information—as many privileged communications do—there is no way to extract those portions of the emails from

The Honorable Joel H. Slomsky
May 12, 2026
Page 9

the privileged communication.  *See also Handy v. Del. River Surgical Suites, LLC,* No. 19-1028, 2021 U.S. Dist. LEXIS 258609, at *5 n.1 (E.D. Pa. Apr. 20, 2021) (Slomsky, J.) ("Ultimately, 'the Third Circuit has held that even when 'the decision include[s] consideration of' various business concerns, the attorney-client privilege still applies to the communications if the decision was infused with legal concerns and was reached only after securing legal advice.") (quoting Special Master's Report and *Lord*, 2019 U.S. Dist. LEXIS 194063, at *38)).

Further, similar to PRIV00724, these emails are work product because they were sent at the request of counsel in forming a legal strategy in anticipation of the litigation NMR reasonably expected as a result of the PED bans.  NMR's anticipation of litigation was reasonable in light of its prior experience of threatened and actual lawsuits as a result of similar bans (*see* **Tab G**) and, of course, their expectation proved true a month later when Plaintiff Howard Taylor filed this lawsuit.  And, once again, Plaintiffs cannot demonstrate a substantial need for these emails because they will have ample opportunity to question witnesses about the non-privileged facts underlying these communications.  *Borgia*, 2014 U.S. Dist. LEXIS 123180, at *16; *Deshields*, 2010 U.S. Dist. LEXIS 116522, at *6.

- **PRIV001212.** Plaintiffs' argument with respect to this email is a blatant effort to obtain counsel's strategy regarding an issue that Plaintiffs inserted in this litigation.  After Howard Taylor filed this litigation in late 2023, he concocted a plan to try game the system by transferring some of his horses to his mother, Judith Taylor, obtaining appraisals from a friend of his in order to sell the horses to her.  (*See* **Tab H** (Email from Robert Boni, Appraiser, to Howard Taylor (March 25, 2024) ("As requested, attached please find my Appraisal of your nine listed horses .. . it will be curious how the Gural group reacts to what you are planning. I have also attached my 'friends and family' friendly Invoice… let me know if this is what you need or if you need anything additional and I will mail the hard copy.") (ellipses in original) (TAYLOR005402)).

This ruse was apparent to NMR when Judith Taylor was entering horses to race that were previously owned by her son.  Given the pendency of this litigation, Defendant and NMR contacted their counsel (Angelo Genova, Esq.) and sought legal advice.  (*See* March 27, 2026 Letter (**Tab B** at p. 8 § II. R).) Mr. Genova provided legal advice and relayed a strategy that related to this litigation.  As explained to Plaintiffs, PRIV001212 is an email among business representatives discussing and implementing this legal advice and litigation strategy. As with the prior documents, there is no feasible way to extract the facts from the privileged portion of the communication that involves Mr. Genova's legal advice.  *Lord*, 2019 U.S. Dist. LEXIS 194063, at *43.

With respect to the work product doctrine, Plaintiffs state, without evidence, that the email had "a substantial non-litigation purpose, namely the extension of a business ban at the Meadowlands and other racetracks." (*Supra* p. 4.) Defendant's counsel have represented on numerous occasions that the email relates to legal advice and strategy Mr. Genova provided and Plaintiffs' speculation is not sufficient to pierce the work product protection. *Lane*, 2015 U.S. Dist. LEXIS 64679, at *9. Nor do Plaintiffs provide any basis under Rule 23(b)(3) to have access to this document because, as with the other entries, Plaintiffs will have the opportunity to depose witnesses about any underlying facts. *Borgia*, 2014 U.S. Dist. LEXIS 123180, at *16; *Deshields*, 2010 U.S. Dist. LEXIS 116522, at *6.

The Honorable Joel H. Slomsky
May 12, 2026
Page 10

<hr>

### 2.    The emails forwarding Mr. Genova's privileged communication are all privileged and protected by the work product doctrine.

Defendant's privilege log and follow-up letters explain the basis for why this second category of emails are protected by the attorney-client privilege and work product doctrine. Plaintiffs' argument not only ignores those explanations, but attempts to ignore the history of this case. As Plaintiffs allege in their Amended Complaint, on November 3, 2023, NMR published a press release listing 33 individuals, including Plaintiff Howard Taylor, who would be banned from racing at the Meadowlands. (Amend. Compl. (ECF No. 17) ¶ 77.) The day before NMR issued the Press Release, it was sent as a courtesy to the 33 individuals. That day, November 2, 2023, Mr. Taylor emailed Brice Cote of NMR and first denied purchasing "EPO or any like substance," stating he was "unaware of any US Attorney exhibit" indicating he purchased EPO. Mr. Taylor then threatened litigation, writing: "Please warn Mr. Gural that if my name appears in the press release and the facts cannot be proven, I will file a lawsuit against The Meadowlands and Gural personally for damages resulting from his libelous and defamatory remarks." (**Tab I** (GURAL00092739).)

Thus, anticipating litigation from Mr. Taylor, Defendant and NMR sought legal advice from their outside counsel (Mr. Genova). Mr. Genova provided legal advice and conveyed his thoughts on strategy in connection with Mr. Taylor's threatened litigation. Each of the emails in the second group of documents are from November 2023 following this legal advice and, as explained repeatedly to Plaintiffs, involved transmitting Mr. Genova's legal advice confidentially among NMR's highest executives, Mr. Cote (Director of Investigations), Defendant (CEO), and Mr. Settlemoir (COO), and implementing that legal advice. These communications are privileged even though an attorney is not on the communication. *Smithkline*, 232 F.R.D. at 477 *Moffatt*, 2014 U.S. Dist. LEXIS 151326, at *4. Plaintiffs' efforts to recharacterize the emails as relating to a "business decision" is contrary to the facts and counsel's representations.

As to the work product doctrine, the timing of the emails and their context demonstrates unequivocally that they are made in anticipation of litigation, which had been threatened by Plaintiff. (*See* **Tab I**.) That Defendant and NMR's highest business executives may be gathering factual information in response to the legal strategy conveyed by counsel does not render the document any less protected by the work product doctrine. *See, e.g.*, *Holtzman v. Phila. Museum of Art*, No. 22-cv-00122-JMY, 2024 U.S. Dist. LEXIS 148233, at *27 (E.D. Pa. June 14, 2024), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 151057 (E.D. Pa. July 3, 2024) (research performed by employee of party at direction of counsel in anticipation filing lawsuit protected by work product)*; Newspring Mezzanine Capital UU, L.P. v. Hayes*, No. 14-1706, 2015 U.S. Dist. LEXIS 185509, at *12 (E.D. Pa. Apr. 21, 2015). (spreadsheets and reports compiled by non-attorney CFO at request of counsel to prepare for litigation protected by work product); *Keating v. McCahill*, No. 11-518, 2012 U.S. Dist. LEXIS 91179, at *20 (E.D. Pa. June 28, 2012) (draft document prepared by party in anticipation of litigation that was to be shared with counsel protected by work product). And, as with the prior documents, Plaintiffs make no effort to show a substantial need for these emails since they will have the opportunity to depose witnesses about the factual information underlying the ban of Mr. Taylor. *Borgia*, 2014 U.S. Dist. LEXIS 123180, at *16; *Deshields*, 2010 U.S. Dist. LEXIS 116522, at *6.

### 3.    Conclusion

If the Court wishes to review these documents *in camera*, Defendant will of course provide them at the Court's convenience. Defendant believes, however, that his detailed privilege log,

The Honorable Joel H. Slomsky
May 12, 2026
Page 11

the March 27 and April 20, 2026 letters (**Tabs B & E**) from Defendant's counsel, and the above analysis, satisfies Defendant's burden to substantiate his designation of these 23 documents as protected by the attorney-client privilege and work product doctrine without needing to burden the Court with *in camera* review.

Sincerely,

COZEN O'CONNOR & GENOVA BURNS LLC


By:      */s/ Jason A. Kurtyka*
         Jason A. Kurtyka
         **Cozen O'Connor**
         *Attorneys for Plaintiffs Howard and Judith Taylor*


         */s/ Lawrence Bluestone*
         Lawrence Bluestone
         **Genova Burns LLC**
         *Attorneys for Defendant Jeffrey Gural*